IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARTIN K. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10-cv-233-MEF |
| v. | ) | |
| | ) | |
| ERIC HOLDER, *et al.*, | ) | (WO-DO NOT PUBLISH) |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Defendants' Motion for Summary Judgment, filed April 8, 2011.  (Doc. # 19).  Plaintiff Martin Russell ("Russell"), an employee of the Bureau of Prisons ("the BOP"), has sued the Defendants claiming that he was passed over for a promotion because of his race.  The Defendants have moved for summary judgment on the sole count of race discrimination, arguing that Russell cannot demonstrate that Warden Darlene Drew's ("Drew") proffered reasons for selecting a black candidate instead of Russell, who is white, are pretextual.  For the foregoing reasons, that motion (Doc. # 19) is due to be GRANTED.

### **I. JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).  The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

## II. LEGAL STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56(a) is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party may demonstrate the existence of or absence of a genuine dispute as to any material fact by pointing to materials in the record "including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those evidentiary submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings" and by its own evidentiary submissions or those on file, demonstrate that there is a genuine factual dispute for trial. *Id.* at 324. The Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary

judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

### III.  FACTS AND PROCEDURAL HISTORY

In May 1992, Russell, a white male, began working for the BOP as a correctional officer at the Federal Prison Camp in Montgomery, Alabama.  (Doc. # 28 Ex. 3).  From August 1995 to June 2001, Russell worked at the medium security facility in Coleman, Florida.  *Id.*  In June 2001, Russell returned to work at the prison camp in Montgomery.  *Id.*  On June 15, 2007, the BOP began taking applications for a vacant correctional counselor position at the facility in Montgomery.  (Doc. # 19 Ex. 1).  The application posting indicated that the position required "arduous physical exertion involving prolonged walking and standing."  *Id.*  The correctional counselor position was a level G9 position and would have been a promotion for Russell.

Russell applied for the position, and the BOP's consolidated staffing unit selected him as one of the five 'best qualified' applicants.  (Doc. # 19 Ex. 3).  The BOP also selected Leamon Jenkins ("Jenkins"), a black male, as one of the 'best qualified' applicants.  In accordance with BOP procedure, Drew received an "All Applicant Data Report," which included the work experience and qualifications for each of the five 'best qualified' applicants.  BOP procedure provided that Drew could either choose to promote a candidate on the 'best qualified' list or choose to leave the position vacant.  (Doc. # 27 Ex. 8 at 40).  According to Russell, once the 'best qualified list' was generated, whether

3

or not a particular candidate got promoted was "a crapshoot" because the warden was free to select any candidate he or she wanted from the 'best qualified' list. (Doc. # 28 Ex. 4 at 8).

On June 27, 2007, Drew selected Jenkins for the correctional counselor position. Drew testified during her deposition and stated in her affidavit that she selected Jenkins based on his prior work experience. Specifically, she chose him for the promotion because he had broader work experience, having been employed at medium-security BOP facilities in Talladega, Alabama and Jesup, Georgia. (Doc. # 19 Ex. 6). Drew also found that Jenkins's experience with a prisoner riot in 1995 and his efforts in making security recommendations distinguished him from the other applicants. (Doc. # 19 at 7). Russell had worked at a medium security facility in Coleman, Florida, but his application did not demonstrate that he had either been involved in an inmate disturbance or made suggestions to improve facility safety.

Six days before Drew selected Jenkins for the correctional counselor position, on June 21, 2007, Jenkins was involved in a serious motorcycle accident. He was hospitalized six days and had steel rods and screws implanted to treat his broken leg and arm. After returning to work, Jenkins was unable to perform the physical requirements of the correctional counselor position. Drew testified, "I don't know exactly when that accident occurred; nor do I know the exact date of when I was beginning the merit promotion board." (Doc. # 27 Ex. 8 at 97). Drew later clarified that while she did not

4

recall with certainty, she believes she did not know about Jenkins's accident before making the decision to promote him. (Doc. # 27 Ex. 8 at 104–05).[1] Jenkins's promotion became effective August 19, 2007.

## IV.  DISCUSSION

The sole count in Russell's complaint alleges that the Defendants violated 42 U.S.C. § 2000e by discriminating against him on the basis of race. Russell also alleges that the Defendants violated 42 U.S.C. § 1981. (Doc. # 1). However, the United States Supreme Court has held that Title VII provides the exclusive judicial remedy for federal employees bringing claims of race discrimination. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–34 (1976). Therefore, the Court will only analyze Russell's Title VII claim.

Because Russell has not presented any direct evidence of race discrimination, his case is a circumstantial one, and the *McDonnell Douglas* burden-shifting analysis applies. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must first establish a prima facie case of racial discrimination. In a failure-to-promote case, the plaintiff must demonstrate that: (1) he belongs to a protected racial class; (2) that he was qualified for the position at issue; (3) that despite being qualified,

---

[1] Russell claims that Drew knew about Jenkins's limitations before she made the decision to promote him. (Doc. # 25 at 17). However, he doesn't support this assertion with a citation to the record, and this Court cannot find any evidence to support his contention. Even if Drew had known about Jenkins's injury at the time she selected him for the correctional counselor position, she testified that she would not have assumed from his hospitalization alone that Jenkins would subsequently be unable to perform the physical requirements of the correctional counselor position. (Doc. # 27 Ex. 8 at 98).

5

the plaintiff was not selected for the position; and (4) that the position was filled with an individual outside the protected class. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). The Defendants concede, for purposes of this motion, that Russell is able to establish the elements of a prima facie case of race discrimination.

### A. *Non-discriminatory reason for hiring Jenkins*

Once a plaintiff establishes a prima facie case of discrimination, thereby raising an inference that he was the subject of intentional race discrimination, the burden shifts to the defendant to produce legitimate, non-discriminatory reasons for the challenged employment action. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). Drew testified that she hired Jenkins because he possessed unique work experiences that the other candidates did not possess. Specifically, Drew testified that Jenkins stood out to her because:

1) he had worked in other BOP facilities, including medium-security facilities;

2) he had been involved in a 1995 prisoner uprising;

3) he had made several safety suggestions to his supervisors, and the institution which employed him had adopted those suggestions;

4) he had participated in mock exercises intended to prepare correctional officers for prisoner uprisings; and

5) he had won the Correctional Officer of the Year award.

(Doc. # 27 Ex. A at 46–47).

The Court finds—and Russell concedes—that the Defendants have met their burden of production. The reasons Drew pointed out are legitimate, non-discriminatory reasons for promoting Jenkins instead of Russell.

### B. *Pretext*

Once the defendant has produced a non-discriminatory reason for its employment decision, the plaintiff bears the ultimate burden of demonstrating that the proffered reason is merely pretext for unlawful discrimination. *Holifield,* 115 F.3d at 1564. A plaintiff may demonstrate pretext by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the Defendants' proffered legitimate reasons that "a reasonable fact finder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). It is not enough for a plaintiff to demonstrate that he was more qualified than the person who received the promotion. *Id.* "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." If a plaintiff uses his own qualifications to establish pretext, then he must show "the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.*

Russell argues both that he was more qualified than Jenkins, and that Jenkins's motorcycle injury made Jenkins unqualified for the correctional counselor position. Each argument will be discussed in turn.

7

### *1. Russell's claim that he was the more qualified candidate*

Russell claims that a few criteria made him more qualified than Jenkins for the correctional counselor position. Russell was a navy recruiter for several years and has a degree in communications. He claims that these attributes make him more qualified to communicate with prisoners, a requirement for the correctional counselor position. Russell was "three years senior" to Jenkins and had more experience handling inmate trust fund accounts than Jenkins. Last, Russell points out that, unlike Jenkins, he had no bad judgment debts against him.

This evidence is not sufficient to raise a genuine dispute of fact regarding whether or not Drew's proffered legitimate reason for promoting Jenkins were pretext. Rusell has demonstrated that he has different employment and education experience than Jenkins, but not that his resume was necessarily better. Russell's educational background may be more suited to the correctional counselor position than Jenkins's. However, Russell has failed to demonstrate that his educational background and experience as a navy recruiter outweigh all of the criteria that Drew noticed in Jenkins's application, including his experience with a prisoner uprising and his initiative in suggesting security policies. In other words, Russell has come nowhere near to demonstrating that "the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* Accordingly, Russell cannot demonstrate that the BOP's proffered non-discriminatory reasons for promoting Jenkins were pretextual.

### *2. Russell's claim that due to injury, Jenkins was unqualified for the position*

Russell also claims that due to Jenkins's motorcycle injury, Jenkins was unable to perform the duties of correctional counselor and therefore that Drew's selection of him must have been motivated by race. Jenkins's accident occurred six days before Drew made her selection for the vacant correctional counselor's position. It is undisputed that after his injury, Jenkins was not able to properly perform the physical aspects of his job.

However, Russell has not provided any evidence that Drew knew about Jenkins's accident before selecting him for the correctional counselor position. Russell provided the affidavit of Timothy Blevins, who testified that if an injury prevents an employee from coming to work, the warden is usually informed of the injury within one to two days. (Doc. # 38 Ex. 1). However, this testimony does not create a genuine issue of material fact with respect to whether Drew actually knew about *this* particular accident before selecting Jenkins for the position. Drew's testimony was that she could not fully recall, but did not believe that she knew of Jenkins's injury before selecting him for the correctional counselor position. If Drew did not know about Jenkins's injury before making her selection, then his injury cannot demonstrate pretext.

Even if Drew did know about Jenkins's injury, Russell has presented no evidence that she knew the extent of Jenkins's injuries. She testified that without medical documentation explaining Jenkins's condition, she would not have concluded that Jenkins's injury rendered him unfit for the correctional counselor position. There is certainly no evidence that Drew had been provided with medical documentation

9

regarding Jenkins's injuries.

Russell describes in great detail what physical limitations plagued Jenkins after his accident. However, anything occurring after Drew made her selection is simply not relevant to establishing whether her initial selection of Jenkins was motivated by race. As Russell has not created a genuine factual dispute for trial about whether or not Drew's reasons for promoting Jenkins were pretextual, the Defendants' motion for summary judgment is due to be granted.

## V.  CONCLUSION

It is hereby ORDERED that the Defendants' Motion for Summary Judgment (Doc. # 19) is GRANTED. A separate final judgment will be entered in this case.

Done this the 8th day of July, 2011.

        /s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE